**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000604**
**21-FEB-2019**
**07:48 AM**

NO. CAAP-16-0000604

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
MICHAEL GLENN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 14-1-0921)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Reifurth, JJ.)

Defendant-Appellant Michael Glenn was convicted by a jury on one count of Terroristic Threatening in the First Degree, in violation of Hawaii Revised Statutes ("HRS") section 707-716(1)(e) (Supp. 2013)[1]/ following a confrontation between Glenn and Kawika Paiva ("Kawika"). The Circuit Court sentenced Glenn to a five-year term of imprisonment with credit for time served. Glenn appeals from the Judgment of Conviction and Sentence ("Judgment") entered by the Circuit Court of the First Circuit ("Circuit Court")[2]/ on August 30, 2016.

On appeal, Glenn contends that (1) the Circuit Court erred in its failure to either secure from him a waiver of the

---

[1]/ "A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . or to commit a felony: (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]" Haw. Rev. Stat. § 707-715 (Supp. 2013).

"A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening: . . . [w]ith the use of a dangerous instrument[.]" Haw. Rev. Stat. § 707-716(1)(e).

[2]/ The Honorable Rom A. Trader presided.

insanity defense or to sua sponte require the jury to consider it, and (2) there was insufficient evidence to support his conviction.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Glenn's points of error as follows and affirm without prejudice to any subsequent petition under Hawaiʻi Rules of Penal Procedure, Rule 40, to the Circuit Court addressing the ineffective assistance of counsel claim suggested in Glenn's opening brief:

(1) Glenn argues that a majority of the court-ordered doctors who examined him before trial found no penal responsibility on his part; that he did not waive the defense of lack of penal responsibility; that his position on the insanity defense was unclear; that courts can impose the insanity defense on an unwilling defendant; that fitness for trial is not competency to waive defenses, and there was no attempt here to address his ability to waive or assert the "capacity defense"; and that a further inquiry was needed to address his desire to assert any "mental capacity defense."[3/]

Glenn fails to identify where in the record he objected to the jury instructions as required by Hawaiʻi Rules of Appellate Procedure ("HRAP") 28(b)(4). Nevertheless, this court may notice as plain error the omission of an unrequested jury instruction if it appears that the defendant has "come forward with credible evidence going to the defense that the jury should have been able to consider" and it would "serve the ends of justice and prevent the denial of fundamental rights to address such an omission." *State v. Taylor*, 130 Hawaiʻi 196, 207-08, 307 P.3d 1142, 1153-54 (2013) (footnote and internal quotation marks omitted) (quoting *State v. Kikuta*, 125 Hawaiʻi 78, 95, 253 P.3d 639, 656 (2011)). As such, "[t]he appellant-[defendant] must

---

[3/]    Glenn does not appear to contend, and does not argue, that any such waiver was not knowing, voluntary, and intelligent. Therefore, we do not consider the issue. Haw. R. App. P. 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]"); Haw. R. App. P. 28(b)(7) ("Points not argued may be deemed waived.").

first demonstrate instructional error by rebutting the presumption that unobjected-to jury instructions are correct." *State v. Brooks*, 123 Hawai'i 456, 468, 235 P.3d 1168, 1180 (App. 2010) (internal quotation marks omitted) (quoting *State v. Nichols*, 111 Hawai'i 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006)). "If the appellant is able to rebut this presumption, the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt[.]" *Brooks*, 123 Hawai'i at 468, 235 P.3d at 1180 (citing *Nichols*, 111 Hawai'i at 334, 141 P.3d 974 at 981).

> The statute addressing impaired capacity provides:

> If the report of the examiners filed pursuant to section 704-404, or the report of examiners of the defendant's choice under section 704-409, states that the defendant at the time of the conduct alleged was affected by a physical or mental disease, disorder, or defect that substantially impaired the defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law, the court shall submit the defense of physical or mental disease, disorder, or defect to the jury or the trier of fact at the trial of the charge against the defendant.

Haw. Rev. Stat. § 704-408 (Supp. 2013). Although the statute states that "the court *shall* submit the defense" to the jury upon such a finding by the examiners, it must be read *in pari materia* with HRS sections 704-402 (1993) and 701-115 (1993), which address the same subject matter. *See State v. Frazer*, 137 Hawai'i 488, 493, 375 P.3d 267, 272 (App. 2016) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." (quoting Haw. Rev. Stat. §1-16 (2009))).

"Physical or mental disease, disorder, or defect excluding responsibility is an affirmative defense." Haw. Rev. Stat. § 704-402(1). The intent behind the statute is "to foreclose the issue of the defendant's lack of responsibility due to a physical or mental disease, disorder, or defect *unless some evidence raises that issue*." Haw. Rev. Stat. § 704-402 cmt. (emphasis added). "No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented." Haw. Rev. Stat. § 701-115(2). Further, "[i]f the defense is an affirmative defense, the defendant is entitled to

an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability." Haw. Rev. Stat. § 701-115(2)(b). Put another way, the defendant bears the burden of proving by a preponderance of the evidence that they are entitled to an affirmative defense. *See* Haw. Rev. Stat. § 701-115 cmt.

Therefore, we conclude that, when read *in pari materia* with HRS sections 701-115 and 704-402, HRS section 704-408 should be interpreted as requiring the trial court to instruct the jury or to obtain a waiver on the insanity defense only when the jury was presented with evidence indicating that the defendant was affected by a physical or mental disease, disorder, or defect that substantially impaired the defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law.

Here, no such evidence was brought to the attention of the jury. Glenn did not call any of the mental health examiners from his three-member panel as witnesses during the trial. Glenn was the only witness to testify on his behalf, and he never testified or implied that he suffered from a mental disease, disorder, or defect in which he could not appreciate the wrongfulness of his conduct or could not conform his conduct to the requirement of the law. Rather, Glenn testified that he was "trying to prevent [himself] from getting hurt" and had no intention of hurting Kawika, consistent with Glenn's apparent strategic decision to rely on self-defense.

Indeed, the transcript from the jury trial clearly reflects that Glenn relied on self-defense in closing and jury instructions. By contrast, there was no indication prior to or during the trial that Glenn intended to rely on a defense relating to his alleged lack of penal responsibility due to mental disease, disorder, or defect. In the pretrial memorandum, Glenn did not check "Insanity" as an issue or defense; rather, he checked "Defense of Self/Other/Property." Likewise, Glenn's proposed jury instructions did not address his mental health issues, but instead set forth an instruction on self-defense.

From a strategic standpoint, it appears that Glenn chose to forgo the insanity defense, and instead, rely on self-defense. And, according to the September 23, 2015 Hawaii State Hospital report, he was capable of working together with his attorney to come to that decision. In light of this decision and the fact that there was no evidence relating to Glenn's mental health presented to the jury, the Circuit Court was not required to secure a waiver of the insanity defense or to sua sponte require the jury to consider it.

Even if the Circuit Court submitted the insanity defense to the jury, there was no context for the jury to consider it. *See State v. Nuetzel*, 61 Haw. 531, 542, 606 P.2d 920, 927 (1980)) (The test for the insanity defense "encourages maximum informational input from expert witnesses[,]" but reserves the ultimate decision for the fact finder.). Furthermore, just because a defendant is suffering from a mental illness does not mean the defendant is suffering a defect for which he should avoid criminal liability. *State v. Freitas*, 62 Haw. 17, 19, 608 P.2d 408, 410 (1980). Accordingly, Glenn has failed to come forward with credible evidence such that the jury should have been able to consider the insanity defense, and consequently, that there was plain error. *See Taylor*, 130 Hawaiʻi at 204, 307 P.3d at 1150 (citing *Kikuta*, 125 Hawaiʻi at 95, 253 P.3d 656); *see also State v. Locquiao*, 100 Hawaiʻi 195, 206, 58 P.3d 1242, 1253 (2002) ("With respect to defenses that negate penal liability, the defendant has the initial burden to adduce credible evidence of facts constituting the defenses[.]" (internal quotation marks omitted) (citing Haw. Rev. Stat. § 701-115 cmt. (1993))). Glenn's first point of error is therefore without merit.

(2) Glenn argues that "[t]he incongruity of the [S]tate's proof is evident from the testimony of its own witness" and that "[g]iven that this is basically a credibility contest, it is clear that notwithstanding the court's instructions, the finder of fact did not hold the State to its burden of proof beyond a reasonable doubt."

In reviewing sufficiency of the evidence, "[t]he test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *State v. Kalaola*, 124 Hawai‘i 43, 49, 237 P.3d 1109, 1115 (2010) (quoting *State v. Richie*, 88 Hawai‘i 19, 33, 960 P.2d 1227, 1241 (1998)). "Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Kalaola*, 124 Hawai‘i at 49, 237 P.3d at 1115 (internal quotation marks omitted) (quoting *Richie*, 88 Hawai‘i at 33, 960 P.2d at 1241).

Here, the jury found Glenn guilty of Terroristic Threatening in the First Degree. "A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . or to commit a felony . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person." Haw. Rev. Stat. § 707-715(1). "A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument." Haw. Rev. Stat. § 707-716(1)(e). "Dangerous instrument" is defined as a "weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." Haw. Rev. Stat. § 707-700 (1993).

Glenn highlights that on one hand, Kawika "claimed that [Glenn] told him to remove his Bob Marley shirt because he is not a [b]lack man, and also immediately after [Kawika] claims that [] Glenn challenged him to a fight, calling him names typically understood to be derogatory against African-Americans." Glenn additionally highlights that "within this same time span, [Kawika] did remove the shirt in question." Based on this "incongruity," Glenn asserts that the State failed to carry its burden of proof beyond a reasonable doubt. Glenn's assertion is without merit.

Even if this were considered to be incongruous, there was substantial evidence that Glenn committed Terroristic Threatening in the First Degree. Kawika testified that he heard Glenn say "Eh, fat boy. Fat boy. Hey fat boy"—which Glenn admitted to—and that he saw Glenn "ma[k]e a gesture with his hands as a gun and said he's gonna shoot me." Kawika additionally testified that Glenn took out a bat from his bag and whacked the ground three or four times. When the State asked, "at any point did [Glenn] make a move?" Kawika testified:

> A    He gestured towards me like -- he had the bat cocked back like he was ready to swing and he stepped towards me. Every time he would step forward, I would step back keeping that distance between us. I didn't want him to come close with that bat.
>
> Q [by Prosecutor] How close did he get to you with that bat?
>
> A    The closest was about six feet.
>
> Q    Were you scared?
>
> A    Of course.
>
> Q    Why?
>
> A    'Cause he had a bat. I had nothing.
>
> Q    On a scale of one to ten, with one being not scared and ten being very, very scared, how scared were you?
>
> A    It was a nine.

Kawika's cousin, Niko Paiva ("Niko") corroborated Kawika's testimony, saying that Glenn "called [Kawika] a fat boy," put up his hand "in the form of a gun" and said, "I would shoot you," while he "pointed in Kawika's face." Niko also stated that Glenn was yelling, very angrily, "You want to go?" at Kawika, and chased Kawika around while Kawika tried to keep his distance and was telling Glenn to put the bat down. Niko also identified the area where concrete had chipped from Glenn hitting the bat on the ground.

Together, the testimonies of Kawika and Niko were sufficient for a reasonable juror to conclude that Glenn threatened Kawika by gesturing that he was going to shoot him while saying he was going to shoot him and by motioning with his baseball bat and slamming the bat onto the concrete ground. As such, there existed credible evidence which is of sufficient

quality and probative value to enable a person of reasonable caution to support a conclusion that Glenn committed Terroristic Threatening in the First Degree. *Kalaola*, 124 Hawai‘i at 49, 237 P.3d at 1115. Therefore, sufficient evidence exists to support the jury's conclusion that Glenn committed Terroristic Threatening in the First Degree. *See* Haw. Rev. Stat. §§ 707-715, 707-716(1)(e); *cf. State v. Ledune*, No. CAAP-16-0000549, 2017 WL 2495415 (Hawai‘i Ct. App. June 9, 2017) (concluding that there was sufficient evidence to support a Harassment conviction based on the complaining witness' testimony that he saw defendant smash a window with a baseball bat, waving the bat while looking and screaming at the witness, and that he "felt kind of threatened with the bat" so he evacuated the area); *cf. State v. Miyose*, No. CAAP-14-0001163, 2016 WL 6885340, at *1 (Haw. Ct. App. Nov. 21, 2016) (Noting that there was substantial evidence that defendant participated in "causing the bodily injury to another with a dangerous instrument, a bat."). Accordingly, Glenn's second point of error is without merit.

Based on the foregoing, the Judgment of Conviction and Sentence filed on August 30, 2016, is affirmed without prejudice to any subsequent petition under Hawai‘i Rules of Penal Procedure, Rule 40, to the Circuit Court addressing the ineffective assistance of counsel claim suggested in Glenn's opening brief.

DATED: Honolulu, Hawai‘i, February 21, 2019.


On the briefs:

Stuart N. Fujioka
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge